Louisiana-Nevada Transit Co. *v.* Ozan Lumber Co.

5-2736                                                    360 S. W. 2d 120

Opinion delivered September 17, 1962.

*Weisenberger & Wilson,* by *John L. Wilson, Moses, McClellan, Arnold, Owen & McDermott,* by *James R. Howard,* for appellant.

*Tompkins, McKenzie & McRae,* for appellee.

Carleton Harris, Chief Justice. Appellee, Ozan Lumber Company, instituted an action for damages against appellant, Louisiana-Nevada Transit Company, and F. S. McGee. The action was filed as the result of a fire alleged to have been caused by the negligence of appellant and McGee, the fire resulting in damage to timber land owned by Ozan. The Circuit Court, sitting as a jury, awarded judgment against Louisiana-Nevada and McGee in the amount of $2,388,[1] and apportioned the negligence as 80% to appellant and 20% to McGee. From the judgment so entered, Louisiana-Nevada brings this appeal.[2] For reversal, appellant asserts first, that the acts of its employees were not the proximate cause of the damages suffered by appellee, and second, that there is no substantial evidence supporting the findings that the transit company was responsible for 80% of Ozan's damages.

---

[1] The amount of judgment is not questioned in this appeal.

[2] McGee has not appealed, and the judgment, as to him, has already become final.

Appellant owns and operates a pipe line which traverses lands owned by Ozan. The line is buried from 18 to 24 inches below the surface of the ground, and pressure on the line varies from 250 to 400 pounds per square inch. Louisiana-Nevada entered into an oral contract with McGee for the cleaning of the right-of-way, which was overgrown with brush, weeds, and grass, and the company agreed with McGee that its employees would precede his operations, and mark all connections and protrusions upon the line, in order that McGee's bulldozer operator would avoid striking them.

McGee commenced work under the contract, starting at Cotton Valley, Louisiana, and working northward. A large diesel powered bulldozer, equipped with a nine-foot steel blade, was used, and the right-of-way was cleared to a width of eighteen feet.[3] Connections on the line were located both above and below the ground, and on each day prior to September 12, 1960, an employee of the transit company preceded McGee's employees, marking all connections and danger areas on the line, both above and below the ground. The markings were accomplished by placing a red flag on a stick, or by a transit company employee standing on the connection and waving off the bulldozer operator. The latter, when coming to a marked connection, would go around it. Appellant company possessed a map of the line, prepared by its engineers, which supposedly pointed out all connections on the line, both above, and below, the ground.

B. Bullock, foreman for McGee, testified that Hale Bowden, district superintendent of Louisiana-Nevada Transit Company, told him there were no connections in the area worked on September 12th; that this was the only day that appellant company did not have an employee present, and engaged in marking. On that date, the bulldozer struck a connection and broke it off. The broken valve then released gas, and fire immediately broke out. McGee's employees were unable to extinguish the fire until Bowden came out and cut off the gas. After arriving, it

---

[3] Accomplished by making two trips.

took Bowden at least an hour to accomplish this task, and fire burned over and damaged approximately five acres of timber land belonging to appellee. An employee of the transit company "beat out" the fire, and poured some water on the burning stumps. No fire lane was plowed around the burned area by either appellant's employees or those of McGee. In fact, no further steps of any nature were taken to ascertain that the fire had completely ceased burning, or to insure against its recommencement. The whole area was left unattended, following repair of the line, completed about one o'clock in the morning. The next day, aided by a strong wind, the fire broke out again, and burned over additional large portions of Ozan's land. It was extinguished around six o'clock of the evening of the second day, by forest rangers.

Appellant contends that it is not liable, because its failure to mark the location of the valve was not the proximate cause of the fire, but rather that the proximate cause was the breaking of the connection, and this last was due to the manner in which McGee's employee operated the bulldozer. Appellant company asserts that it was only obligated under the contract to mark connections on the surface of the ground;[4] that McGee's dozer was only supposed to scrape along the surface, or not more than an inch or two beneath; that actually, the dozer dug down ten or twelve inches, thereby hitting the valve, which was about eight inches beneath the ground. The superintendent admitted that he told McGee's employees that they would encounter no trouble on September 12th (when no company man was present marking the connections), but he testified that this statement was based on the fact that the bulldozer was only due to scrape the surface, rather than to cut down into the earth. Bullock, McGee's employee, testified that when Bowden told him there was "clear sailing", he took it to mean there was no danger ahead, either above the ground, or below it. McGee and his em-

---

[4] Mr. Bowden testified that it was not his duty to point out any connections under the ground unless it was a dangerous area, for instance, where the ground was boggy, or contained big rocks which, in being moved, could break a valve. The area where the valve was broken was not of that type.

ployees denied that the blade dug into the ground, but the court found that this did happen.

However, the fact that McGee's driver operated the bulldozer in an incompetent or negligent manner, does not relieve appellant company of liability. Though Mr. Bowden stated that he was only required, under the contract, to mark all connections on the surface of the ground, his actions, and other portions of his testimony, somewhat indicate to the contrary. He testified that the company had prepared a map of its line, supposedly showing all connections, both above and below the ground. He stated that the map did not show this particular valve, and he did not know that this valve was underground at the location. Mr. Bowden testified that the engineer who prepared the map simply missed that particular valve. The witness admitted that, in preceding McGee's working crew, he marked every connection of which he had knowledge, whether on the surface, or under the ground. From the testimony:

"Q. Mr. Bowden, as I understand it, what you were actually doing, you were marking all connections that you knew of?

A. That's right.

Q. Whether they were above ground or below ground?

A. That's right.

Q. In doing that on below-ground connections, you had a map of the pipeline, is that correct?

A. Yes, sir.

Q. And that map supposedly showed—

A. That's right.

Q. —all of your connections on the line?

A. That's right.

Q. But your map didn't show this particular connection?

A. That's right.

Q. So for that reason you did not mark it?

A. That's right.

Q. I think you answered this question indirectly, but let me ask you directly. Had you known the existence of this connection, would you have in the ordinary course of your duties out there notified Mr. McGee's employees?

A. I sure would.''

Further:

''Q. That, of course, was a highly dangerous pipeline, if broken?

A. Yes, sir.

Q. Every connection on that pipeline was a potential danger spot, was it not?

A. Any place—any connection that is welded on is a danger spot, for machinery.

Q. It is a danger spot?

A. Yes, sir.

Q. That is the reason you mark them on the map, is it not?

A. Yes, sir.

Q. And the purpose for which you keep that map is to mark those danger areas?

A. That's right.

Q. And whoever had charge of the map at the time this particular connection was installed apparently simply missed putting it on there, is that right?

A. Yes, sir.''

The testimony is in dispute between McGee and Bowden as to whether all connections were to be marked, or only those above the surface of the ground, but it would appear from the custom that had been followed on the days preceding September 12th, that McGee's employees were justified in thinking that all valves were to be marked. At any rate, it definitely appears, even from Bowden's own

testimony, that the cleaning operation, involving the possibility of machinery coming into contact with a welded connection, was dangerous, and it is obvious that the company considered even the underground connections a dangerous area, because it marked them on the map. Appellant cites authorities which deal with intervening causes (contending that the negligent operation of the dozer was the sole and actual cause of the fire). We do not agree that these cases are applicable. Rather, the fire, and the resulting damage occurred from the concurring acts of each. There is substantial evidence that both appellant and McGee were negligent, and that such negligence on the part of each was a proximate cause of the fire and resulting damage to Ozan's property. Appellant failed to mark a dangerous area—McGee operated the dozer carelessly and negligently. Of course, if McGee had not struck the connection, there would have been no fire, but, on the other hand, if McGee had been warned of the valve in that particular area, the driver would have gone around, and thus avoided striking it. See *Temple Cotton Oil Co.* v. *Brown,* 192 Ark. 877, 96 S. W. 2d 401. In addition, both were obviously negligent in permitting the fire to break out a second time, having taken no precautions to prevent this occurrence. This second fire caused even more extensive damage. We find no merit in appellant's contention.

Appellant company complains, in the alternative, that the court committed error in apportioning the negligence between it and McGee. The company stoutly asserts that there is nothing in the record to indicate that it was more at fault in causing the fire than McGee. Of course, it is immaterial whether this Court actually agrees with the apportionment arrived at by the Circuit Court. Just as we are not permitted to substitute our judgment for that of a jury, we likewise are not permitted to substitute our own opinion for that of the trial court sitting as a jury. We are only concerned with whether there was substantial evidence to support the judgment rendered. There is no question of law involved; rather, the question of the degree of liability assessed to each defendant is, in this instance,

purely a question of fact. We think there was substantial evidence, as heretofore set out, to support the findings of the trial court. While that court did not give its reasons for the manner of apportioning the overall degree of negligence, it is true, as pointed out by appellee, that had the transit company taken only one precaution, *viz.*, marking the connection in question, the fire would not have occurred.

Finding no error, the judgment is affirmed.

MR. JUSTICE McFADDIN not participating.